IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TIFFANY T. BROOKS, | ) | CASE NO. 1:15 CV 713 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

Before me by referral[1] is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Tiffany T. Brooks, for disability insurance benefits and supplemental security income. The Commissioner has answered[2] and filed the transcript of the administrative record.[3] Under the requirements of the initial order,[4] the parties have briefed their positions.[5] After review of the briefs, the

---

[1] This matter was referred to me under Local Rule 72.2 in a non-document order dated April 12, 2016.

[2] ECF # 10.

[3] ECF # 11.

[4] ECF # 5.

[5] ECF # 14 (Brooks's brief), ECF # 17 (Commissioner's brief), ECF # 19 (Brooks's reply brief).

issues presented, and the record, it was determined that this case can be decided without oral argument.

## Facts

### A.    Background facts and decision of the Administrative Law Judge ("ALJ")

Tiffany Brooks, who was thirty-three years old at the time of the administrative hearing,[6] lives with her grandfather and is not married.[7]  Her past relevant work history includes being a cashier, certified nurse assistant, and a phlebotomist.[8]

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Brooks had not experienced twelve continuous months of disability and denied the claim.[9]

### B.    Issues on judicial review

Brooks asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Brooks presents the following issue for judicial review:[10]

> Whether the ALJ erred in finding that there had been no continuous 12-month period during which the applicant had not engaged in substantial gainful activity, without analyzing whether the payments in the twelfth month were

---

[6] ECF # 11 (Transcript "Tr.") at 170.

[7] *Id*. 170-171.

[8] *Id*. at 63.

[9] *Id*. at 15.

[10] ECF # 14 at 1.

based on applicant's productivity and without mentioning whether the vocational expert supported the applicant's testimony.

The Court recommends that the ALJ'S finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

# Analysis

## A.  Standard of review

### 1.  *Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[11]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

---

[11] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

## 2.      *Sequential evaluation process*

As the Court stated in *Heston v. Commissioner of Social Security*, the substantial

evidence standard of review applies in the context of the five-step sequential process required

by the Social Security Act:

> The Social Security Act requires the Secretary to follow a "five-step
> sequential process" for claims of disability. First, plaintiff must demonstrate
> that she is not currently engaged in "substantial gainful activity" at the time
> she seeks disability benefits.  Second, plaintiff must show that she suffers from
> a "severe impairment" in order to warrant a finding of disability. A "severe
> impairment" is one which "significantly limits ... physical or mental ability to
> do basic work activities." Third, if plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected to last for at least
> twelve months, and the impairment meets a listed impairment, plaintiff is
> presumed to be disabled regardless of age, education or work experience.
> Fourth, if the plaintiff's impairment does not prevent her from doing her past
> relevant work, plaintiff is not disabled. For the fifth and final step, even if the
> plaintiff's impairment does prevent her from doing her past relevant work, if
> other work exists in the national economy that plaintiff can perform, plaintiff
> is not disabled.[12]

## B.      Application of standard

This case presents the narrow issue of whether the 2012 income received by the

claimant from EMH Medical Center established that claimant had substantial gainful activity

(SGA) for that period such as would preclude any finding of disability.

The relevant facts are simple and not disputed.  In October 2012 Brooks began

working for the EMH Regional Medical Center as a scheduling secretary, for which she

received $12.25 per hour.[13]  In total, Brooks received $5,175.79 for the year 2012, which

---

[12] *Heston v. Comm'r of Soc. Sec.*, 245 F.2d 528, 534 (6th Cir. 2001) (citation omitted).

[13] Tr. at 14.

-4-

averages to $1,725.26 per month.[14] For purposes of establishing an entitlement to benefits, an individual's earnings are "substantial" if they average to more than $1010 per month in 2012.[15]

Brooks asserts that her 2012 earnings should not be used in determining SGA because she was then in training, and so not directly contributing anything to EMH's productivity.[16] To that end, Brooks states that during this period she mostly observed others performing their tasks and never performed tasks on her own.[17] She further notes that the vocational expert in this case stated that her job requires 30 days to three months to learn.[18]

Brooks maintains that because her pay did not relate to her productivity during this period, any payments she received are analogous to job coaching situations where the earnings are not counted toward a determination of SGA.[19]

I note initially, as does Brooks,[20]  that the agency's rules do not appear to directly address this situation, nor does there appear to be any case law specifically applicable to this case. But, as will be discussed below, there is a clear analytical path forward.

---

[14] *Id.*

[15] *Id*.

[16] *Id*.

[17] ECF # 14 at 15 (citing record).

[18] *Id*. (citing record).

[19] *Id*. at 18.

[20] *Id*. at 17.

-5-

The path begins with the assumption that the Commissioner's interpretation or construction of his own regulation is entitled to substantial deference unless it is plainly erroneous or inconsistent with the regulation.[21]  As stated by the Supreme Court in *Gardebring v. Jenkins:*

> [When] it is the Secretary's regulation that we are construing, and when there is no claim in this Court that the regulation violates any constitutional or statutory mandate, we are properly hesitant to substitute an alternative reading for the Secretary's unless that alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation.[22]

Here, the regulation at issue is 20 C.F.R. § 404.1574, which sets out the term "substantial gainful activity." As a general rule, courts have held that this term within the context of this regulation "means the performance of substantial services with reasonable regularity in some competitive environment."[23] While the term "training program" does not appear in the legislation, the case law distinguishes between  training programs that are in the nature of subsidies for therapy or attending school, and so not substantial gainful employment, and those that are not.[24]  Thus, the regulations, as applied,  do not count as

---

[21] *Lyng v. Payne*, 476 U.S. 926, 939 (1986);  *Ohio Cast Products, Inc. v. Occupational Safety & Health Review Comm'n,* 246 F.3d 791, 793 (6th Cir. 2001)(citations omitted).

[22] 485 U.S. 415, 430 (1988)(construing Secretary of HHS interpretation of regulation requiring public notice of AFDC program requirements).

[23] *DeRienzis v. Heckler*, 748 F.2d 352, 353 (2nd Cir. 1984).

[24] *Id.*

substantial gainful activity those "make work" jobs not normally found in the actual economy, which could not be filled by a person "pursuing a real career."[25]

This distinction is illustrated by the holding in *Lamkin v. Bowen*.[26]  Lamkin was a disabled man who faced the loss of previously awarded benefits because, in part, he was participated in a training program at Safeway stores prior to being hired by Safeway as a regular employee.[27]  The funding for this program came from federal job training funds.[28]  The ALJ determined that the claimant's activities at Safeway were "mere training" under 20 C.F.R. § 404.1592(b) and not providing services to the employer.[29]

The court agreed, noting that there was no employer-employee relationship during the training period, and that the claimant was the recipient of funds intended by Congress for training disadvantaged individuals.[30]  Most importantly, the court further observed that employers were reimbursed for up to 50 percent of the wages and benefits they paid to the participants "in order to compensate them for their training efforts and for the low productivity of the trainees."[31]

---

[25] *Kolman v. Sullivan*, 925 F.2d 212, 213 (7th Cir. 1991).

[26] *Lamkin v. Bowen*, 721 F.Supp. 263 (D. Colorado 1989).

[27] *Id*. at 265.

[28] *Id*.

[29] *Id*. at 266.

[30] *Id*. at 269.

[31] *Id*.

-7-

In addition, and in the context of collecting social security taxes, the Supreme Court ruled in *Bingler v. Johnson* that an employer's payment for continuing education for its employees was income and not a grant for education purposes because the employer exacted a "*quid pro quo*" from the employees.[32]  Specifically, the employer required the employees to return to the employer after completing the paid additional training.[33]  There was no sense in which the compensation for training was a "no strings" educational grant that would characterize a scholarship.[34]  Moreover, the fact that the expected productivity benefit to the employer was a future benefit, not a present one, did not invalidate the *quid pro quo* nature of the transaction.[35]

Here, the training program was not like that in *Lamkin,* which was found to be "mere training." There is no indication in this record that Brooks was paid by funds earmarked by a third party for training disadvantaged workers, and no evidence that EMH was paid to compensate itself for any loss attributable to Brooks' purported lack of productivity.  By all accounts, this was a standard employee - employer relationship whereby Brooks was paid and treated the same as all other people who begin as new hires.

---

[32] *Bigler v. Johnson,* 394 U.S. 741, 757-58 (1969).

[33] *Id*.

[34] *Id*. at 751.

[35] *Id*. at 757-58. I note here, as does the Commissioner, that "gainful employment" does not depend on whether or not a profit was realized. 20 C.F.R. § 404.1572.

Similarly, there is no indication that EMH intended to provide Brooks with a "no strings" educational or training grant to simply go to school at EMH to learn about the job of a medical scheduling secretary. In no way does EMH appear to have structured Brooks' training as a purely educational endeavor with a course curriculum, grades, and tests, to finish with a graduation that sent Brooks off to another entity to locate a job. Rather, the record here shows that this was more analogous to the *quid pro quo* situation in *Bingler* in that EMH trained Brooks with the expectation that she would, in return, then be a fully functioning employee, well-trained in EMH procedures and familiar with EMH corporate culture. Further, as the Commissioner notes, this training, which required Brooks to show up at a regular times and follow directions of the supervisor, was thus actual work activity during the months it took place, and so not analogous to vacation or sick pay.[36]

In sum, the Commissioner's interpretation of the regulation concerning substantial gainful activity is reasonable; not in conflict with the regulations plain language or any other statutory or constitutional mandate; and is, therefore, consistent with the ways paid training is understood by the courts in this and other contexts. In particular, the ALJ's finding that the paid training in this case is substantial gainful activity is wholly consistent with the judicially recognized definition of that term, which finds it to be "the performance of substantial services with reasonable regularity in some competitive environment."[37] The ALJ's decision is, therefore, entitled to substantial deference and should be affirmed.

---

[36] *See*, ECF # 17 at 17.

[37] *Lyng*, 476 U.S. at 939.

## Conclusion

Accordingly, for the reasons stated, I recommend finding that the decision of the Commissioner is supported by substantial evidence and so should be affirmed.

Dated: June 24, 2016                           s/ William H. Baughman, Jr.
                                               United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[38]

---

[38] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).